UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JANICE KUCINSKAS,

        Plaintiff,

vs.                                          Case No.  3:04-cv-1041-J-16MCR

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS CAUSE** is before the Court on Plaintiff Janice Kucinskas' Complaint (Doc.

1), seeking judicial review of an administrative decision denying her application for

Social Security benefits.[1]   The Court has thoroughly reviewed the record, the briefs and

the applicable law.  For the reasons set forth herein, the Commissioner's decision is

**REVERSED** and **REMANDED**.

## I.   PROCEDURAL HISTORY

Plaintiff protectively applied for a period of disability and disability insurance

benefits ("DIB") on July 25, 2002, alleging she became unable to work on July 5, 2001.

(Tr. 17, 52-54).  The Social Security Administration denied Plaintiff's application initially

and upon reconsideration.  (Tr. 29-38).  Plaintiff filed a timely request for a hearing on

the matter.  (Tr. 38).  Plaintiff's request was granted and a hearing was conducted by an

administrative law judge ("ALJ") on January 13, 2004.  (Tr. 39-42, 297-330).

---

[1]The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  <u>See</u>
Doc. Nos. 14, 15.

The ALJ issued a decision on April 14, 2004, concluding Plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to a period of disability or DIB.  (Tr. 17-26).  Plaintiff filed a timely request for review by the Appeals Council which was denied on August 10, 2004.  (Tr. 5-9).  Consequently, the ALJ's April 14, 2004 decision became the final decision of the Commissioner.  See 20 C.F.R. § § 404.955, 404.981.  After exhausting all administrative remedies, Plaintiff filed her timely Complaint (Doc. 1) in the United States District Court on October 4, 2004.

## II.     NATURE OF CLAIMED DISABILITY

### A.      Basis of Claimed Disability

Plaintiff claims to be disabled since July 5, 2001, due to acid reflux, diabetes, hypertension, neuropathy, degenerative disc disease, sciatica, depression, headaches and chronic pain.

### B.      Summary of Evidence Before the ALJ

Plaintiff was born September 3, 1950, and was 53 years of age at the time the ALJ conducted the administrative hearing.  (Tr. 18, 52).  Plaintiff possesses a high school education and past work experience as a bank teller, insurance clerk, mortgage clerk, receptionist, medical records clerk and patient account representative.  (Tr. 18, 304, 305).

In his decision, the ALJ provides a detailed account of Plaintiff's medical records. Relevant to this matter, Plaintiff has a history of lower back pain as well as upper and lower extremity pain accompanied by numbness.  Plaintiff also has a history of uncontrolled diabetes. (Tr. 23).

-2-

The record reveals that, among other ailments, Plaintiff sought treatment of her lower back pain from Gina Tiomico, M.D. (Tr. 92-107). Dr. Tiomico eventually referred Plaintiff to the Mayo Clinic for evaluation of her complaints of right lower extremity pain. (Tr. 122). There, Plaintiff was treated by William Cheshire, M.D., a neurologist, and Michael Osborne, M.D., a pain consultant. Id. Diagnostic studies, including an electromyography ("EMG") and magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine, revealed Plaintiff suffered polyradiculneuropathy; neuropathic right lower extremity pain secondary to polyradiculneuropathy; and mild degenerative disc disease. (Tr. 123). Plaintiff was prescribed Ultram for her pain. (Tr.129). Subsequent patient notes indicate Plaintiff responded well to the medication and that she experienced no cognitive side effects. (Tr.133-138). The notes further reveal Plaintiff's gait was cautious and slightly antalgic with decreased stance time on the right. (Tr. 123). Plaintiff demonstrated a mildly diminished range of motion in her lumbar spine with trace weakness in the lower right extremity and full strength in the left lower extremity. Id.

Plaintiff was treated for intractable lower extremity pain by Daniel S. Rowe, M.D. of the Shands Center for Pain Management from December 2001 until July 2003. Dr. Rowe noted that Plaintiff's pain resulted from diabetic plexopathy and that increased doses of Neurontin were not effective in treating her symptoms. (Tr. 202). In fact, the medication caused Plaintiff to experience increased fatigue and nausea. Id. On January 23, 2002, Dr. Rowe noted that Plaintiff's pharmacologic regimen of Neurontin, Elavil and Ultram was entirely ineffective in controlling her pain. (Tr. 198). Dr. Rowe further noted Plaintiff was in "sheer misery". He therefore began treating her pain with

5 mg of Methadone. Id.

On February 18, 2002, Dr. Rowe noted Plaintiff's pharmacologic regimen of 7.5 mg of Methadone, provided her significantly decreased levels of pain, increased activity and an overall improvement in her quality of life with minimal side effects. (Tr. 196). During a follow-up examination on July 10, 2002, Dr. Rowe noted Plaintiff's pharmacologic regimen included 10 mg of Methadone, supplemented by 10 mg of Elavil. (Tr. 194). Plaintiff continued to report an increase in activity as well as an improved quality of life with minimum side effects. Id. Plaintiff's physical examination revealed she experienced decreased allodynia and hyperpathia of the right lower extremity with full range of motion of all joints. Additionally, Plaintiff's neurological examination was "grossly normal". Id.

On January 9, 2003, Plaintiff began reporting increased, but tolerable, pain in her arms and legs. (Tr. 253) Neurotrin was added to Plaintiff's pharmacologic regimen and she reported feeling better. (Tr. 250). By June 2003, Plaintiff was advised to begin reducing her dosage of Methadone as tolerable. (Tr. 247).

In addition to the treatment summarized above, Plaintiff was also treated by Guy T. Selander, M.D. of Jacksonville Family Practice Associates from September 2001 until August 2003. In an undated letter, Dr. Selander states that Plaintiff has been diagnosed with polyradiculoneuropathy of the lower extremities, arthritis of the knees and hands, chronic pain and uncontrolled diabetes. (Tr. 242). Dr. Selander further states Plaintiff's chronic pain is treated with Methadone which makes her less attentive and less able to

concentrate.  Id.  Finally, Dr. Selander opines Plaintiff "is unable to work, even in a sit down job".  Id.

At the hearing before the ALJ, Plaintiff offered the following relevant testimony. Plaintiff stopped working as a customer service representative on July 5, 2001 due to extreme pain in her right leg.  (TR. 302-303, 304).  She was subsequently terminated from her job and collected unemployment benefits for approximately 26 weeks.  (Tr. 303).  Plaintiff went out  "a couple of times" to look for work however it became increasingly difficult to drive and attend interviews.  Id.

Plaintiff experiences pain in both legs, arms, hands and feet.  (305).  The pain increases when she is stressed or when her glucose levels are high.  (Tr. 307).  Plaintiff currently takes Methadone, Neurotin and Elavil, which work well in treating her pain and depression.  (Tr. 309).  Before taking Methadone, Plaintiff rated her pain as 9 on a scale of 1 to 10.  Id.  With the Methadone, Plaintiff's pain ranges between 5 and 6.  The side effects of her medication include a reduced appetite, lightheadedness and dizziness.  (Tr. 321).

Plaintiff's ability to stand or walk depends on whether she is having a "good" or "bad" day.  (Tr. 311-312).  On a good day, Plaintiff can walk for 30 minutes, while on a bad day she is unable to walk for 10 minutes.  Id.  Plaintiff's bad days are caused in part by over exerting herself the day before.  Id.  Plaintiff experiences difficulty gripping and lifting objects due to pain and numbness in her arms and hands.  (Tr. 314).  After being diagnosed with neuropathy, Plaintiff's right leg would give out and cause her to fall. (Tr.

318).  Plaintiff's physician therefore advised her to use a cane for added support when walking.  (Tr. 319).

Plaintiff's daily activities include getting dressed, feeding her cats, light house cleaning and warming meals prepared by her husband.  (Tr. 320-321).   Plaintiff's hobbies include reading short stories, magazines and recipes.  (Tr. 317).  On weekends, Plaintiff watches movies at home with her husband.  (Tr. 324).  Tasks such as getting dressing and performing minor household activities now take twice as long to complete.  (Tr. 311).

Plaintiff worries her condition will worsen and fears falling, particularly in public. (Tr. 322).  Regarding the last time she fell, Plaintiff testified that, while putting up Christmas decorations, she "just lost total control" and "kind of went over."  Id.

### C.    Disability Determination

### 1.    Definition of Disability

The term "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.

**2.    The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R.

sections 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, she is not disabled.  29 C.F.R. § § 404.1520(a)(4)(i), 416.920(a)(4(i).  Second, if

a claimant does not have any impairment or combination of impairments which

significantly limit her physical or mental ability to do basic work activities, then she does

not have a severe impairment and is not disabled.  20 C.F.R. § § 404.1520(a)(4)(ii),

416.920(a)(4(ii).  Third, if a claimant's impairments meet or equal an impairment listed in

20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. sections

404.1520(a)(4)(iii), 416.920(a)(4(iii).  Fourth, if a claimant's impairments do not prevent

her from doing past relevant work, she is not disabled.  20 C.F.R. sections

404.1520(a)(4)(iv), 416.920(a)(4(iv).  Fifth, if a claimant's impairments (considering her

residual functional capacity, age, education, and past work) prevent her from doing

other work that exists in the national economy, then she is disabled.  20 C.F.R. sections

404.1520(a)(4)(v), 416.920(a)(4(v).  Plaintiff bears the burden of persuasion through

step 4, while at step 5 the burden shifts to the Commissioner.  Bowen v. Yuckert, 482

U.S. 137, 146 n.5 (1987).

**3.    Summary of the ALJ's Decision**

In this case, at step one, the ALJ found Plaintiff had not engaged in substantial

gainful activity since July 5, 2001, the alleged onset of disability.  (Tr. 25).  At step two,

the ALJ found Plaintiff suffered diabetes mellitus, diabetic lumbosacral

polyradiculoneuropathy of the upper and lower extremities, degenerative disc disease,

and sciatica.  Id.  At step three, the ALJ found Plaintiff's medically determinable impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Before moving to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC").  See 20 C.F.R. § 404.1520(a)(4)(iv).

In determining Plaintiff's RFC, the ALJ discounted the opinion of Dr. Selander and afforded it little weight.  Additionally, he afforded some weight to RFC assessments by state agency physicians.  Based upon his review of the remaining medical evidence presented, the ALJ determined Plaintiff retained the RFC to do light work with some limitations.  In light of his RFC determination, at step four, the ALJ found Plaintiff's impairments did not preclude her from performing her past work as an insurance clerk or as a mortgage clerk.  Accordingly, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.

## III.   DISCUSSION

### A.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553,

1560 (11th Cir. 1995), citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; accord, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.    Issues Presented

Here, Plaintiff includes only two arguments in her brief; however, each argument raises multiple issues.  First, Plaintiff argues the ALJ improperly minimized her upper and lower extremity pain and its effect on her functional capacity.  Plaintiff maintains the ALJ ignored objective medical evidence supporting the severity of her pain, and instead relied on his own mischaracterization of the evidence in discrediting her testimony.  Plaintiff further maintains the ALJ improperly relied on her receipt of unemployment benefits as grounds to discredit her testimony.  Second, in assessing her RFC, Plaintiff argues the ALJ erred by: (1) discrediting the opinion of her treating physician; (2) relying on the opinions of non-examining, consultative physicians; and (3) failing to fully and fairly develop the record.

In response, the Commissioner argues the ALJ's decision is supported by substantial evidence.  According to the Commissioner, the ALJ properly considered Plaintiff's subjective complaints of pain as well as the medical evidence presented. Plaintiff however failed to meet her burden in establishing that she is disabled.  The Commissioner further argues there was good cause to discount Dr. Selander's opinion because it was contradicted by the weight of other evidence in the record.  Finally, the Commissioner argues the ALJ meet his duty to fully and fairly develop the record in this case.

### C.    Pain

Initially, Plaintiff argues the ALJ failed to properly consider the severity of her pain and its effect on her ability to perform work related activities.  Pain is a non-exertional impairment.  Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560, quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

Pain alone may be disabling, even when its existence is unsupported by objective

evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an

individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. §

423(d)(5)(A).

In this case, the ALJ did not reference the three-part pain standard, but it

appears he conducted the correct analysis for determining the severity of Plaintiff's

pain.[2]  Specifically, the ALJ found Plaintiff had diabetes mellitus, diabetic

polyradiculoneuropathy of the upper and lower extremities; degenerative disc disease;

and sciatica–medically determinable impairments reasonably expected to produce the

type of pain and symptoms alleged. (Tr. 24).   This finding meets the first prong of the

pain standard.  The ALJ's discussion of the medical evidence makes obvious his

findings that objective medical evidence did not confirm the severity of Plaintiff's alleged

pain, nor that Plaintiff's condition was of such severity that it would reasonably be

expected to give rise to the alleged pain.  These findings meet the second and third

prongs of the pain standard.

With respect to Plaintiff's diabetes mellitus and diabetic polyradiculoneuropathy,

the ALJ noted that upon examination Plaintiff displayed only trace weakness of her

lower extremities.  He further noted that in February 2003, Plaintiff's examination

revealed she had normal grip strength, no numbness or tingling and no impairment of

---

[2]In assessing Plaintiff's subjective complaints,  the ALJ correctly referred to C.F.R. §§ 404.1529 and
404.1527 as well as SSR 96-7p, 96-2p and 96-6p.

gross and fine movement.  Plaintiff was able to lift 20 pounds with both hands.  There was no pain in Plaintiff's lower extremities and no limitation of movement.  Additionally, Plaintiff had normal reflexes as well as normal straight leg raises.

With respect to Plaintiff's degenerative disc disease and sciatica, the ALJ noted examinations consistently revealed negative leg raising and only mildly diminished lumbar spine range of motion.  An x-ray revealed Plaintiff suffered no fracture or dislocation.  Additionally, Plaintiff consistently reported that medication significantly relieved her pain.  These objective medical findings amount to substantial evidence, supporting the ALJ's implicit findings as to the severity of Plaintiff's pain.

### D.    Credibility

Next, Plaintiff argues the ALJ failed to properly consider her subjective complaints of pain, numbness and weakness.  When a claimant's complaints suggest a greater level of severity of impairment than can be shown by the objective medical evidence, the ALJ must consider other evidence including: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication received for relief of pain or other symptoms; (6) any measures, other than treatment used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1512 (b)(2)-(6), 404.1529(c)(3), 416.929(c)(3) see also SSR 96-7p and SSR 96-3p.

If the ALJ decides not to credit a claimant's testimony about pain or other

symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  As a matter of law, however, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ plainly recognized that he was required to articulate the rationale for his determination.  In that respect, he stated:

> The undersigned finds that the claimant's testimony is not fully credible. Despite her complaints of disabling pain, the claimant collected unemployment for 26 weeks following her alleged onset date. The claimant held herself out to be willing and able to work and also went out on job interviews. This clearly reflects adversely on her credibility. Black v. Apfel, 143 F.3d 383 (8th Cir. 1998).[3]

> Additionally, the claimant has described daily activities that included reading, watching movies, vacuuming, dusting, visiting, and shopping. It is also noted that claimant was capable of getting on a ladder to put up Christmas lights. These activities are inconsistent with her complaints of severe limitations.

---

[3]In his decision, the ALJ relied on Black v. Apfel, 143 F.3d 383, to discredit Plaintiff's testimony due to her receipt of unemployment benefits.  In Black, the Court upheld an ALJ's finding that a claimant's pain testimony was not fully credible when the claimant continued to look for work and collect unemployment benefits after her alleged onset of disability. There, the Court found substantial evidence supported the ALJ's credibility findings because, in addition to her receipt of unemployment benefit: (1) the claimant had been laid off from her job, rather than forced to quit work due to her medical condition; (2) the ALJ properly considered factors similar to those set forth in SSR 96-7p; and (3) there was an absence of objective medical evidence to support the claimant's complaints of disabling pain.  Black, 143 F.3d at 386.

(Tr. 21).  There are three problems with the ALJ's recitation.  First, because Plaintiff's complaints suggest a greater level of severity of impairment than shown by the objective medical evidence, the ALJ was required to consider other evidence including  the seven factors set forth in SSR 96-7p.  Instead, it appears he found Plaintiff's testimony not fully credible based solely upon her receipt of unemployment benefits and her daily activities.[4]  Certainly, the ALJ was entitled to consider these factors in assessing Plaintiff's testimony; however, he was also required to consider the remaining factors outlined in SSR 96-7p.[5]

Second, the ALJ discounted Plaintiff's credibility due to her activities of daily living because she admitted being able to read, watch movies, visit her daughter, vacuum, dust and shop.  Again, while a claimant's activities of daily living are a factor the ALJ may consider in determining credibility, see 20 C.F.R. § 1529(c)(3)(i), where the ALJ takes the activities out of context, ignoring significant limitations, courts have found substantial evidence does not support the ALJ's assessment.  See Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (Appeals Council's determination was not supported by substantial evidence where the Appeals Council found activities of daily living inconsistent with disability but ignored evidence that daily activities had been significantly affected).

---

[4]Plaintiff argues that, even if the ALJ could discredit her testimony based upon her receipt of unemployment benefits, she only received benefits for 26 weeks following her alleged onset date. Accordingly, the ALJ should have considered a later onset date rather than discredit her testimony for the entire relevant period.  The Court finds no authority to support this argument.

[5]Based upon review, it is unclear whether the ALJ considered the side effects of Plaintiff's medication in assessing her subjective complaints.  His discussion regarding her use of Methodone and its effect on her ability to concentrate is addressed only with respect to the opinion of her treating physician.

Plaintiff testified the minimal household chores she used to complete in a day now take three days to complete. (Tr. 312, 320). Plaintiff further testified that, on a good day, she is able to walk around a grocery store for up to 30 minutes; however, on a bad day, she is able to walk no more than 10 minutes. (312). Plaintiff used to attend flea markets and antique shows but has not done so in at least 10 months because she is unable to walk or stand for long periods of time. (Tr. 318). Additionally, Plaintiff testified she visits her daughter on weekends when her husband is available because she is unable to drive the 45-mile distance. (Tr. 323). Here, as in Parker, the ALJ effectively took Plaintiff's testimony regarding daily activities out of context. Moreover, based upon review, it is unclear, what role, if any, Plaintiff's ability to read magazines, short stories and recipes influenced the ALJ's assessment of Plaintiff's subjective complaints.

Third, it appears the ALJ may have taken out of context at least one piece of evidence which affected his consideration of Plaintiff's daily activities. The ALJ noted that Plaintiff's activities were inconsistent with her subjective complaints, in part, because she "was capable of getting on a ladder to put up Christmas lights." The Court's independent review of the record does not confirm that statement. Plaintiff testified that she lost her balance and fell while decorating a window for Christmas. (Tr. 322). There is nothing in the record to suggest Plaintiff climbed a ladder to do so. This reason for discounting Plaintiff's credibility is inaccurate and therefore, inadequate.

In sum, the ALJ failed to properly apply SSR 96-7p in considering Plaintiff's subjective complaints of pain and other symptoms. Additionally, while the ALJ

articulated two specific reasons for not fully crediting Plaintiff's testimony, his assessment of Plaintiff's activities of daily living is not supported by substantial evidence in the record.  Accordingly, remand is appropriate. See Foote, 67 F.3d at 1562.

### E.   Residual Functional Capacity   ("RFC")

RFC is an assessment, based upon all relevant evidence, of a claimant's remaining ability to work despite her impairments. 20 C.F.R. § 404.1545(a); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  In determining a claimant's RFC, the ALJ must consider the objective medical findings made by each physician as well as their analysis based upon those medical findings.  Additionally, the ALJ must consider all of the claimant's impairments, including subjective symptoms such as pain.

In her second argument, Plaintiff challenges the ALJ's RFC assessment for various reasons.  According to Plaintiff, the ALJ erred by (1) affording little weight to the opinion of Dr. Selander, her treating physician; (2) relying on the opinions of non-examining, consultative physicians; (3) and failing to obtain additional evidence to determine the extent of her functional limitations.  Below, the Court addresses each issue separately.

### F.   Treating Physicians vs. Consultative Physicians

A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); see also 20 C.F.R. § 404.1527(d)(2).   However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's

impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); see also

Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

Substantial weight must be given to the opinion, diagnosis and medical evidence

of a treating physician unless there is good cause to do otherwise.  See Lewis v.

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583

(11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature

and severity of a claimant's impairments is well-supported by medically acceptable

clinical and laboratory diagnostic techniques, and is not inconsistent with the other

substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. §

404.1527(d)(2).  However, the ALJ may discount a treating physician's opinion or report

regarding an inability to work if it is unsupported by objective medical evidence or is

wholly conclusory.  See Edwards, 937 F.2d 580 (ALJ properly discounted treating

physician's report where the physician was unsure of the accuracy of his findings and

statements.)

Plaintiff argues the ALJ improperly discounted the opinion of her treating

physician.  Specifically, at issue, is the undated letter submitted by Dr. Selander stating

that: (1) Methadone makes Plaintiff less attentive and unable to concentrate; and (2)

Plaintiff is unable to work, "even in a sit down job".  (Tr. 242).  The ALJ found the weight

of the medical evidence failed to support such a restrictive RFC and therefore accorded

Dr. Selander's opinion little weight.  The ALJ noted that Plaintiff reported minimum side

effects while taking Methadone and that its use did not preclude her ability to read

magazines, short stories and cookbooks.  The ALJ further noted that patient notes

revealed Plaintiff was doing well and that there were no impairments to her motor functioning.  Accordingly, the ALJ properly discounted Dr. Selander's opinion.

Nonetheless, based upon its own review, the Court finds there was good cause not to afford Dr. Selander's opinion substantial or controlling weight.  Even as Plaintiff acknowledges, the general statements included in the letter represent Dr. Selander's only assessment of her limitations.  See Doc. 12 at pp. 17-18.  Moreover, Dr. Selander's opinion concerning the nature and severity of Plaintiff's impairments is neither supported by the medical findings nor consistent with the other substantial evidence in the record.  The ALJ therefore was not required to give it controlling weight.  Additionally, the record contains two RFC assessments by state agency reviewing physicians.  The first assessment, dated September 20, 2002,  was performed by Harry L. Collins, Jr., M.D., a board-certified orthopedic surgeon.  (Tr. 182-189).  The second assessment, dated March 27, 2003, was performed by Reuben E. Brigety, M.D., a board-certified obstetrician/gynecologist.  (234-241).  Each concluded that Plaintiff was capable of performing work related activities.  In considering their opinions, the ALJ noted that they did not deserve as much weight as Plaintiff's treating physician and did not afford them high probative value.  Accordingly, the ALJ's weighing of the medical opinions of Drs. Selander, Collins and Brigety was proper and is supported by substantial evidence.

### G.    Developing The Record

Plaintiffs remaining arguments appear interrelated.  By way of summary, Plaintiff argues the ALJ erred in assessing her RFC because he partially relied on the outdated opinions of physicians who did not consider the progressive nature of her diabetic radiculoneuropathy.  Specifically, those opinions failed to take into account that, in addition to the symptoms Plaintiff experienced in her lower extremities, Plaintiff also began experiencing symptoms in her upper extremities.

Plaintiff further argues the record is incomplete because it contains no updated medical opinions clearly identifying the full extent of her current limitations.  In light of these circumstances, the ALJ should have obtained an updated functional assessment along with any other information necessary to accurately determine her RFC.[6]

A claimant bears the burden of proving that she is disabled.  20 C.F.R. § § 404.1520,  416.912.  As part of meeting that burden, a claimant is required to furnish medical and other evidence establishing her impairments as well as their effect on her ability to work.  20 C.F.R. § 416.912.  Regarding the claimant's responsibility, the Regulations state:

> You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your case.

20 C.F.R. § 416.912.

---

[6]Along the same lines, Plaintiff also argues the ALJ should have re-contacted Dr. Selander to clarify his opinion regarding the nature of her condition and the effect of Methadone on her ability to concentrate.

The ALJ however has a duty to fully and fairly develop the record.  <u>Welch v. Bowen</u>, 854 F.2d 436, 438 (11th Cir. 1988).  Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  <u>See</u> <u>Graham v. Apfel</u>, 129 F.3d 1420 (11th Cir. 1997).  Based upon the facts presented in this case, the ALJ was under no special duty to fully and fairly develop the record.  Accordingly, Plaintiff was responsible for furnishing relevant evidence showing her impairments, the severity of her impairments and their effects on her ability to work during the period she claimed that she was disabled.

IV.    **CONCLUSION**

In this case, the ALJ failed to properly consider Plaintiff's subjective complaints of pain and other symptoms as set forth above.  Additionally, while the ALJ articulated two specific reasons for not fully crediting Plaintiff's testimony, his assessment of Plaintiff's activities of daily living is not supported by substantial evidence in the record.  Accordingly, the Clerk of the Court is directed to enter judgment pursuant to sentence four, 42 U.S.C. 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to (1) re-evaluate Plaintiff's subjective complaints of pain and other symptoms; and (2) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 30th day of

January, 2006.


_Monte C. Richardson_

**MONTE C. RICHARDSON**
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party